UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PATRICK and KIM DEL MONICO, | ) | No. 04 B 38235 |
| | ) | |
| Debtors. | ) | Judge Goldgar |

## MEMORANDUM OPINION

This matter is before the court for ruling on dueling motions (Docket Item Nos. 97, 104) under section 1112(b) of the Bankruptcy Code, 11 U.S.C. § 1112(b).[1]

The first is a motion from chapter 11 trustee Ronald R. Peterson to convert this chapter 11 case to a case under chapter 7. A group of creditors – Indeck Power Equipment Co., Indeck Power Overseas, Ltd., A&R Leasing, LLC, and Gerald Forsythe (the "Indeck creditors") – have joined in the trustee's motion. The U.S. Trustee also supports conversion, and no creditor has opposed it. Debtor Kim Del Monico has objected, but her husband and co-debtor Patrick has not. The second motion is by Kim to dismiss her bankruptcy case. The trustee and the Indeck creditors have objected to dismissal. No creditors have supported the motion.

For the reasons that follow, the motion to convert this case to a case under chapter 7 is granted. The motion to dismiss Kim Del Monico's case is denied.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1334(a)

---

[1] When this matter was last up on April 25, the court previously set a June 1 ruling date. Although the trustee and Indeck creditors have yet to file their final briefs, the court has concluded that additional briefing from those parties is unnecessary. Nor do there appear to be any facts in dispute that would necessitate an evidentiary hearing.

and 157(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding.

28 U.S.C. § 157(b)(2)(A); *see In re State Street Houses, Inc.,* 305 B.R. 726, 733 (Bankr. S.D.

Fla. 2002) (motion under section 1112(b) is core); *In re Cadiz Properties, Inc.,* 278 B.R. 744,

745 (Bankr. N.D. Tex. 2002) (same).

## 2. Background

Most of the relevant background is contained in the court's March 2, 2005 opinion

granting the U.S. Trustee's request to appoint a chapter 11 trustee (Docket Item No. 76) and can

simply be summarized here. The Del Monicos filed their chapter 11 petition on October 14,

2004, prompted by a civil action against them in the district court that had been filed the year

before. Some of the Indeck creditors are plaintiffs in the action. The complaint alleges an

elaborate and long-standing fraudulent invoicing scheme perpetrated by Patrick, a former Indeck

employee, a scheme in which Kim participated.

Following the bankruptcy filing, the Del Monicos submitted an incomplete set of

schedules, which they then repeatedly amended. The inconsistencies in the schedules coupled

with the Del Monico's vague and shifting testimony at the section 341 meeting (which could not

be concluded and never has been concluded) caused the U.S. Trustee to move for the

appointment of a trustee. On February 22 and 24, 2005, the court held an evidentiary hearing on

the motion.

On March 2, the court issued a 15-page decision granting the motion and appointing a

trustee. The court found that the Del Monicos had filed thoroughly inadequate schedules; had

failed to submit accurate and timely operating reports; had failed to maintain complete and

accurate financial records; had neglected to observe corporate formalities with respect to

International Traffic Consultants, Inc. ("ITC"), a business Patrick operated, and had "hopelessly commingled" the affairs of that corporation with their own; had engaged in unauthorized post-petition transactions; had failed to pay taxes and failed to withhold taxes from ITC employee wages; had displayed a "general incompetence and an absence of fiscal discipline"; and were unworthy of belief. In all, the court said, the evidence "overwhelmingly" showed "gross mismanagement and incompetence at best and dishonesty and fraud at worst," making this a "textbook case for appointment of a chapter 11 trustee." (Slip op. at 12). The Del Monicos did not appeal.

Ronald R. Peterson was appointed trustee and within days moved to convert the case to a case under chapter 7. Peterson contends that conversion is warranted, first, because the estate would be unnecessarily diminished in chapter 11: the Del Monicos had provided no evidence of profitability, and given their confused affairs it was "impossible to develop a complete and accurate understanding" of their operations and current financial position or whether they could maintain a positive cash flow. Second, he argues that there was no reasonable likelihood of rehabilitation. Third, Peterson contends that the Del Monicos' failure to file monthly operating reports and accurate schedules independently justified conversion to chapter 7.

The Del Monicos did not object directly to the motion, but Kim reacted with a motion of her own (a motion that she would have serve as her objection) to dismiss her bankruptcy case. Her case should be dismissed, she says, because she no longer wants to use the bankruptcy process and instead wants to defend the Indeck action in the district court. She argues that she did not participate in her husband's scheme, describing herself as an "innocent bystander." Kim also contends that most of the liabilities belong to Patrick, whereas most of the assets, including the house, belong to her. She asserts that she has no intention of dissipating those assets, and on

the contrary intends to refinance her mortgage with LaSalle Bank. Finally, she characterizes the bankruptcy case as forum shopping by Indeck and claims that dismissing the case will prevent the bankruptcy court having to address Indeck's action.

Peterson responded to the motion, noting (among other things) that according to the Del Monicos' schedules, Kim is liable on all, or virtually all, of the estate's debts. Therefore, he argued, Kim's affairs cannot in fact be separated from Patrick's.

In his response, Peterson revealed that when he arrived at the Del Monicos' residence on March 24 to take possession of their documents, Kim "fled," and Patrick told him his documents were at "his office at Verson Steel" at 93rd and Woodlawn in Chicago. Peterson then discovered a box of records in a closet. Confronted with the documents, Patrick professed surprise and remarked: "Oh, those records." The next day, counsel for the Del Monicos told Peterson that there were no records at the Verson Steel office, that the records were at the house all along. The Trustee later discovered Patrick had no office at Verson Steel. Apart from the characterization that she "fled" when Peterson arrived, Kim does not seriously dispute Peterson's account.

Peterson also revealed that he was accompanied on March 24 by his computer consultant, who made a copy of the hard drives of the Del Monicos' two computers. The consultant later conducted a file deletion analysis. The analysis showed "a massive amount of post-petition file deletion" by the Del Monicos, including the deletion of 20 files between the time the court authorized the inspection and the inspection itself. Kim does not dispute any of this, either.

The same day that Peterson filed his response to Kim's motion, April 19, Patrick and Kim filed amended Schedules D and F. In the amended schedules, the Del Monicos changed the characterization of 32 debts that had been listed in the November 19, 2004 schedules. In the November 19 schedules, those 32 debts had been described as "joint." In the amended

-4-

schedules, none of the debts is "joint." Instead, 27 are now ascribed to "husband," just 5 to

"wife." The Del Monicos have not signed the amended Schedules D and F, affirming under

penalty that the schedules are true and accurate.

One other development deserves mention. On May 5, the Indeck creditors moved to

inspect the Del Monicos' residence again. The motion asserted that photographs and a videotape

from Peterson's initial inspection disclosed property – office furniture and artwork – that the

Indeck creditors later recognized as having been taken from their offices without Indeck's

knowledge or consent. When the motion was presented (on May 10), counsel for the Del

Monicos asserted that one item, a painting, was in the Del Monicos' possession by permission.

But he had no answer for the remaining allegations, stating only that he had been unable to

discuss the motion with his clients.

### 3. Discussion

Section 1112(b) permits a court, on request of a party in interest, to dismiss a chapter 11

case or convert the case to one under chapter 7. 11 U.S.C. § 1112(b). The court has the option

of taking either action regardless of which one the party has sought. *In re Staff Investment Co.,*

146 B.R. 256, 260 (Bankr. E.D. Cal. 1993). Under the statute, whether to convert, dismiss, or do

neither depends on what "is in the best interest of creditors and the estate." 11 U.S.C. § 1112(b).

What is in the best of creditors is a simple matter: the course of action that results in the largest

number of creditors being paid the largest amount of money in the shortest amount of time. The

best interest of the estate focuses on whether the economic value of the estate is greater in or out

of bankruptcy. *Staff Investment,* 146 B.R. at 261.

### a. The Motion to Convert

Taking the motion to convert first, the motion is essentially uncontested. Patrick has not objected to the conversion of the case, and Kim's motion to dismiss, though purportedly meant to function as a response, is not one. Her motion is designed to remove her from the bankruptcy altogether, not to stave off conversion.

The court agrees with Peterson's contention that a conversion to chapter 7 – and a prompt conversion, at that – is in the best interests of creditors and the estate. First, as Peterson correctly notes, the estate will be needlessly diminished in value if the case continues in chapter 11. By its nature, chapter 11 is administratively more expensive and less efficient than chapter 7. In this case, there is no evidence whatever (and the Del Monicos have not even attempted to offer any) that they have a business with any prospect of a positive cash flow. There is, in other words, simply nothing here to reorganize. Creditors, meanwhile, will be paid more quickly with less expense if the estate is quickly liquidated.

Second, as Peterson also correctly notes, the Del Monicos have proceeded in bad faith. That much was evident at the hearing to appoint the chapter 11 trustee, where it became clear that they had failed to file monthly operating reports and accurate schedules. Facts that have come to light since the trustee's appointment have merely served to confirm the court's conclusion: Patrick's game of "hide the ball" with his financial records, the post-petition erasure of massive amounts of data from the Del Monicos' computers, and Indeck's largely undisputed assertions that the Del Monicos are in possession of stolen property. This case has had "bad faith" written all over it from the start.

Chapter 11 is for the debtor with a viable business the assets of which need to be preserved. *In re Silverstein*, 94 B.R. 284, 289 (Bankr. E.D.N.Y. 1988). It is not designed for

-6-

consumer debtors like the Del Monicos: debtors with no viable business seeking simply to "save the house" in the face of litigation from a major creditor. *Cf. Silverstein,* 94 B.R. at 289 (converting chapter 11 case under almost identical circumstances); *see also In re Mogul,* 17 B.R. 680, 681 (Bankr. M.D. Fla. 1982) (converting case where individual debtor did not "have any 'business' which could be reorganized"). It is certainly not for dishonest and untrustworthy debtors proceeding in bad faith. *See In re Citi-Toledo Partners,* 170 B.R. 602, 609 (Bankr. N.D. Ohio 1994) (conversion warranted where debtor "has failed in performing its fiduciary duties").

The trustee has demonstrated "cause" under section 1112(b) to convert this case. The motion to convert the case to a case under chapter 7 will be granted.

### b. The Motion to Dismiss

That leaves Kim's request to extricate herself from the case. The relevant standard in deciding that request is again what "is in the best interest of creditors and the estate." 11 U.S.C. § 1112(b). The interest of creditors and the estate here will best be served if the request is denied and the case remains a joint one.

First, it is by no means evident, as Kim asserts, that her affairs are separate from Patrick's. The schedules filed with the court in fact belie that assertion. The November 19 schedules disclosed assets that (apart from the interest in the land trust holding title to the house) are all joint. The amended Schedules A and B filed January 12 made few changes in that regard. The November 19 schedules, meanwhile, show liabilities virtually *all* of which are joint. The recently amended Schedules D and F do purport to change the nature of the majority of those liabilities, assigning them either to Kim or to Patrick. But those unsigned, unsworn schedules, filed two weeks after the dismissal motion, are nothing more than a cynical attempt to manipulate

the record and provide belated support for dismissal.

Second, Kim's desire no longer to be involved in the bankruptcy and to defend the Indeck action in the district court is beside the point. Kim filed the bankruptcy voluntarily, after all, taking advantage of the court and its processes and enjoying the shelter of the automatic stay.[2] She does not simply get to bid the court and her creditors farewell when it suits her, over her trustee's objection. More important, Kim's motion is cast in terms of what is in the best interest of *Kim*, not what is in the best interest of creditors and the estate. The debtor's interest, however is not mentioned in section 1112(b) and enters into the equation, if at all, only to the extent that the debtor's interests coincide with those of the estate. *See Staff Investment,* 146 B.R. at 261.

In the court's view, the best interests of creditors plainly require the denial of the motion to dismiss. More creditors will be paid more money more quickly if Kim's assets are sold than if she is permitted to escape the bankruptcy and go on her way. This would be true even if Kim were honest, trustworthy, and capable of handling her own affairs. But as the court ruled in appointing a trustee, she is none of these.[3] There is no assurance creditors will be paid anything outside of bankruptcy.

The best interest of the estate points to the same conclusion. There is no reason to believe the estate will be greater outside of bankruptcy. On the contrary, given the substantial doubts about Kim's honesty and ability to handle even basic financial matters, it is safe to conclude that

---

[2]    For this reason, Kim is obviously wrong in claiming, oddly, that the bankruptcy constitutes some sort of forum shopping by Indeck. Indeck did not file the bankruptcy.

[3]    Among other things, the court found that Kim does not manage her own household affairs: she does not balance the check book or pay the bills. She does not even record the checks she has written. She defers to her husband in all financial matters. She also had no qualms about perjuring herself in signing the initial incomplete and accurate schedules.

the estate will be greater if it remains in the hands of an independent, experienced fiduciary.

Kim Del Monico has demonstrated no "cause" under section 1112(b) to dismiss her bankruptcy. The motion to dismiss will be denied.

### 4. Conclusion

For these reasons, the motion of Trustee Ronald R. Peterson to convert this case to a case under chapter 7 is granted. The motion of debtor Kim Del Monico to dismiss her bankruptcy case is denied. Separate Rule 9021 judgments will be entered on each motion in accordance with this opinion.

Dated:  May 13, 2005

ENTER: _____
United States Bankruptcy Judge

-9-