UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| PATRICK and KIM DEL MONICO, | ) | No. 04 B 38235 |
| | ) | |
| Debtors. | ) | Judge Goldgar |

## MEMORANDUM OPINION

Before the court is the application of Kelleher & Buckley ("K&B") -- specifically attorneys John Redfield and Jeffrey White -- for compensation in connection with their representation of debtors Kim and Patrick Del Monico. K&B seeks $55,120 in attorneys' fees and $1,240.68 in costs. The application has drawn objections from a group of creditors described in past rulings as the "Indeck Creditors," from Chapter 7 Trustee Ronald Peterson, from the U.S. Trustee, and from the debtors themselves.

### 1. Facts

The following facts are relevant to K&B's application. The Del Monicos sought relief under the Bankruptcy Code in October 2004, filing a petition under chapter 11. Their initial counsel was attorney John Ellsworth, who represented them until early 2005. Ellsworth never formally sought retention, however, and so his retention never received court approval.[1]

In January 2005, Redfield and White moved to be retained as debtors' counsel. In their motion, Redfield and White alleged that the Del Monicos had agreed to pay them a $30,000 retainer from a certificate of deposit at Hawthorn Bank. When the motion was presented on

---

[1] Ellsworth also never formally withdrew as counsel for the Del Monicos. He filed a motion to withdraw, but the motion was stricken. Despite this, the court and the parties have treated Ellsworth as having actually withdrawn.

February 9, however, it was revealed that the certificate of deposit had been frozen. Accordingly, the motion was granted retroactively to January 1, 2005, and the debtors were authorized to pay a retainer, but the language relating to the source of the retainer was stricken from the order. There is no dispute that at some point the Del Monicos paid Redfield and White $20,000 (not $30,000) as a retainer. The retainer's source, however, was not revealed: Redfield and White did not file, and in fact have never filed, the required Rule 2016(b) disclosure.

In January 2005, a month before the retention of Redfield and White was approved, the U.S. Trustee moved for appointment of a chapter 11 trustee. Through their new counsel, Redfield and White, the debtors strenuously opposed the motion. After a two-day evidentiary hearing, the court issued a lengthy opinion on March 2 granting the motion. In the opinion, the court found appointment of a trustee necessary "beyond reasonable doubt," calling this "a textbook case for appointment of a chapter 11 trustee." Among other things, the court specifically found that the appointment was "in the interest of creditors and the estate under section 1104(a)(2)." The Del Monicos did not appeal.

Peterson was appointed chapter 11 trustee on March 9, 2005. Just over a week later, Peterson moved to convert the case to one under chapter 7. The Del Monicos did not object to the motion directly, and Patrick Del Monico asserted no objection at all. Kim Del Monico, however, reacted with a motion to dismiss her own bankruptcy case, a motion intended to serve as her response to the conversion request. The motion to dismiss was briefed, and on May 13, 2005, the court denied that motion and granted Peterson's motion to convert the case to chapter 7. Again, the court made specific findings about what was in the best interest of the estate, concluding that the interest of the estate was best served both by denying the motion to dismiss and by converting the case. Again, there was no appeal.

Instead, within two weeks of the ruling Redfield and White sought leave to withdraw as counsel for the Del Monicos. On May 25, 2005, the court granted the motion. In the order, the court set a deadline for counsel to file any fee applications. More important, the court also required in the order that the application "disclose the source of any retainer paid to date." Despite this, neither the pending application nor the reply filed in support of it discloses the retainer's source. Both state that simply counsel was paid "by cashier's checks or cash." The source of the retainer remains unknown.

### 3. Discussion

The application for fees and costs will be granted in part and denied in part. In the court's view, K&B is entitled to no more than $11,315 in fees and $327.77 in costs, or a total of $11,642.77. Since K&B has already been paid $20,000, the firm will be ordered to disgorge $8,357.23 to the chapter 7 trustee.

K&B is not entitled to the amount sought and must disgorge fees for three reasons.

*First.* The period during which compensation can be awarded for services is considerably more circumscribed than K&B recognizes. No compensation can be awarded for services before January 1, 2005, the effective date of K&B's retention. No compensation can be awarded for services after May 13, 2005, when the case was converted to chapter 7. *See Lamie v. United States Trustee,* 540 U.S. 526, 534 (2004). Nor can any compensation be awarded for services after the appointment of a chapter 11 trustee on March 9, 2005. *See In re Pro-Snax Distributors, Inc.,* 157 F.3d 414, 425 (5th Cir. 1998). Hence, the only services eligible for compensation are those rendered between January 1 and March 9, 2005, a period of slightly more than two months.

An examination of the invoices K&B has submitted shows that $26,125 in fees and

$912.91 in costs are attributable to services rendered before January 1 and after March 9. Those fees and costs cannot be paid from the estate and must be deducted from the amounts requested. The deductions mean that the most K&B can conceivably be awarded is $28,995 in fees and $327.77 in costs.

*Second.* There are formal problems with K&B's time records. As the U.S. Trustee notes, in many instances K&B is guilty of "lumping" – that is, including several activities in a single time entry without indicating how much time was spent on each activity. *See In re Johnson,* 317 B.R. 347, 351 (Bankr. C.D. Ill. 2004). Because lumping precludes a determination that the time was reasonable, a penalty is warranted in cases where time has been "lumped." *In re Lund,* 187 B.R. 245, 251 (Bankr. N.D. Ill. 1995). Either the fees for the "lumped" entries are reduced by an appropriate percentage, *see, e.g., Lund,* 187 B.R. at 251-52, or compensation for the particular entry is denied altogether, *see, e.g., In re Fry,* 271 B.R. 596, 602-03 (Bankr. C.D. Ill. 2001).

In this case, $12,730 in K&B time entries during the relevant period show impermissible lumping.[2] This is inexcusable. The standards for fee applications are well-established in the case law, and Redfield and White represented themselves in the retention motion not only as "familiar with the Chapter 11 bankruptcy law" but "well qualified to represent the debtor[s] in these proceedings." Forfeiture of the entire $12,730, however, would be unduly harsh. A 50% penalty is reasonable. Accordingly, the $28,995 in fees must be reduced by a further $6,365,

---

[2]    Redfield's lumped entries are for these dates and involve these dollar amounts: 1/4/05, $1,000; 1/11/05, $250; 1/17/05, $125; 1/29/05, $75; 2/5/05, $125; 2/5/05, $125; 2/5/05, $125; 2/7/05, $425; 2/8/05, $1,125; 2/10/05, $125; 2/11/05, $700; 2/15/05, $675; 2/17/05, $375; 2/21/05, $750; 2/21/05, $1,500; 2/24/05, $1,950; 3/2/05, $875. White's lumped entries are for these dates and involve these dollar amounts: 1/7/05, $300; 1/11/05, $250; 1/13/05, $250; 1/17/05, $250; 1/17/05, $250; 1/31/05, $200; 2/2/05, $130; 2/8/05, $400; 2/17/05, $150; 2/21/05, $250.

leaving $22,630.

*Third.* K&B failed to disclose the source of the $20,000 retainer received from the Del Monicos. That critical failure demands a serious penalty.

Section 329(a) of the Code requires an attorney representing a debtor to "file with the court a statement of the compensation paid or agreed to be paid . . . and the source of such compensation." 11 U.S.C. § 329(a). Bankruptcy Rule 2016(b) establishes when the statement should be filed: (1) within 15 days after the order for relief; (2) at any other time as the court may direct; and (3) after any payment or agreement not previously disclosed. Fed. R. Bankr. P. 2016(b). The disclosure statement is no minor matter: "The policy requiring timely disclosure of such matters under § 329 and Rule 2016(b) is central to the integrity of the bankruptcy process." *In re TJN, Inc.*, 194 B.R. 400, 403 (Bankr. D.S.C. 1996); *see also* 9 A. Resnick & H. Sommer, *Collier on Bankruptcy* ¶ 2016.15 at 2016-22 (15th ed. rev. 2005).

Because "[d]isclosure is mandatory, not permissive," *In re Whaley*, 282 B.R. 38, 41 (Bankr. M.D. Fla. 2002), failure to disclose the source of retainer payments is sanctionable. The sanction can include partial or even total denial of compensation, including partial or total disgorgement of fees already paid. *See In re Production Assoc., Ltd.*, 264 B.R. 180, 186, 189 (Bankr. N.D. Ill. 2001). The majority of courts, it appears, punish defective disclosure by denying *all* compensation. *See, e.g., Turner v. Gillewater & Lynch (In re Investment Bankers, Inc.)*, 4 F.3d 1556, 1565 (10th Cir. 1993); *Neben & Starrett, Inc. v. Chartwell Financial Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 882 (9th Cir. 1995); *Hale v. United States Trustee (In re Basham)*, 208 B.R. 926, 931 (B.A.P. 9th Cir. 1997); *In re Griffin*, 313 B.R. 757, 764 (Bankr. N.D. Ill. 2004). The extent to which compensation should be denied rests with the court's sound discretion. *Park-Helena*, 63 F.3d at 882.

The violation of section 329 and Rule 2016(b) in this case is plain. No Rule 2016(b) disclosure statement was ever filed, and the court's May 25 order requiring at least belated disclosure was ignored. At most, K&B disclosed after May 25 that the retainer had been paid by cashier's checks and cash. But that is a disclosure of the *form* of the retainer, not a disclosure of its *source*. The source of the retainer was what had to be disclosed, and it was not. K&B's lack of compliance is particularly troubling in this case, given the fast and loose nature of the Del Monicos' affairs; the Del Monicos' tendency to treat property of the estate as their own and conduct their affairs as if no bankruptcy had been filed; and the serious questions that have been raised about the Del Monicos' honesty.

K&B offers no legitimate excuse for its failure to make the necessary disclosure. The firm argues that neither the court nor any party directed it to make such a disclosure. The direction, though, is in the Code and the Rules, the provisions of which are self-executing. It is not up to the court or creditors to ensure that proposed counsel for debtors does what the law obviously requires. *In re Roberts,* 75 B.R. 402, 410-11 (D. Utah 1987) (noting that "it is not the duty of the bankruptcy judge to ferret out the incorrectness of statements in the debtor's application to employ counsel"). And if the Code and Rules were not enough, the May 25 order also required the disclosure.

K&B also claims that Rule 2016(b) was satisfied by the assertion in the retention motion that the retainer would be paid out of the Hawthorn Bank CD. That so-called disclosure, however, was shown to be false when the motion was presented. The retainer was not paid out of the CD because it could not have been: Hawthorn Bank had frozen the CD. Yet, somehow a retainer was still paid. The source of that retainer is still a mystery.

A sanction, then, is plainly warranted. Although the case law supports a denial of all

compensation to K&B for the Rule 2016(b) violation alone, again that seems unduly harsh. K&B is undoubtedly right in saying that this case was "very demanding" on the time of Redfield and White. As even the Indeck creditors concede (doubtless shedding crocodile tears in the process), K&B had unusually difficult clients who appear not always to have been truthful with their lawyers, much less with others. Of course, the firm brought those clients on itself. Still, under the circumstances, a further 50% reduction in the compensation award is preferable to a denial of all compensation. Reducing the $22,630 figure by an additional 50% leaves $11,315.

*Finally*. Several of the objecting parties argue that K&B should be denied compensation under section 330(A)(4)(A)(ii)(I) for work that was not in the best interest of the estate. Indeed, Peterson and the Indeck creditors seem to suggest that *none* of K&B's work was in the estate's interest. Despite that obvious overstatement, the objecting parties focus on the Del Monicos' opposition to the motion to appoint a chapter 11 trustee and Kim Del Monico's motion to dismiss her bankruptcy case as having not been in the estate's interest.

Work done to oppose the trustee's appointment and seek the dismissal of Kim Del Monico's bankruptcy was not in the best interest of the estate. Indeed, this court's rulings made clear that the estate's best interest required *both* the granting of the trustee motion and the denial of the dismissal motion. This is not to suggest that compensation can never be awarded for opposing motions of this kind merely because the motions are ultimately granted, even if the grant is on "best interest of the estate" grounds. To the contrary, if the *decision* to oppose the motion was in the best interest of the estate at the time, compensation would still be appropriate regardless of the ultimate outcome. That, however, is not the case here. From the start, the appointment of the trustee and denial of the motion to dismiss were so obviously in the best interest of the estate as to warrant denial of compensation.

That said, the compensation award will not be reduced further. The materials the objecting parties have submitted fail to make clear what work and which hours are attributable to the two motions in question. Therefore, no precise reduction on a "not-in-the-best-interest-of-the-estate" basis is even possible. And even if a precise reduction were possible, the 80% reduction already imposed is sufficient to accomplish the purposes of the Code.

### 3. Conclusion

For these reasons, the application of Kelleher & Buckley for compensation is granted in part and denied part. Kelleher & Buckley is awarded $11,315 in attorney's fees and $327.77 in costs, a total of $11,642.77. Because the firm has already been paid $20,000, it must disgorge to the chapter 7 trustee the sum of $8,357.23. Payment must be made within 30 days.

A separate order will be entered in accordance with this opinion.

Dated: February 15, 2006

A. Benjamin Goldgar
United States Bankruptcy Judge